**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UNILOC USA, INC., UNILOC LUXEMBOURG, S.A., | § § § | CIVIL ACTION NO. 2:17-CV-00258-JRG |
| Plaintiffs, | § § § | |
| v. | § § | |
| APPLE INC., | § § § | |
| Defendant. | | |

## MEMORANDUM ORDER AND OPINION

Before the Court is Defendant Apple Inc.'s Motion to Transfer Venue to the Northern District of California (Dkt. No. 25). This Motion is brought pursuant to 28 U.S.C. § 1404(a). Having considered the Parties' arguments and for the reasons set forth below, the Court finds that the Motion should be and hereby is **GRANTED**. It is therefore **ORDERED** that the above-captioned case be transferred to the Northern District of California.

### I.    BACKGROUND

#### A.  The Parties

Plaintiff Uniloc USA, Inc. is a Texas corporation and has maintained offices in Plano since 2007 and in Tyler since 2009. (Dkt. No. 30 at 2–3.) Defendant Apple Inc. ("Apple") is a California corporation with a principal place of business in the Northern District of California. (Dkt. No. 25 at 1.)

#### B.  Procedural History

On April 3, 2017, Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg, S.A. ("Uniloc") filed suit against Apple, alleging infringement of U.S. Patent Nos. 9,414,199; 8,838,976; and

8,239,852. (Dkt. No. 1.) On June 16, 2017, Apple filed this Motion to Transfer Pursuant to § 1404(a) ("Motion to Transfer"). (Dkt. No. 25.) Five days later, Apple filed a Motion for Leave to Propound Venue Discovery ("Motion to Propound"). (Dkt. No. 27.) In its Motion to Propound, Apple asserted that Uniloc's representations in its § 1404(a) briefing in this case (and in prior cases before this Court) appeared "inconsistent with a host of public evidence." (*Id.* at 1.) Apple specifically directed the Court's attention to discrepancies with respect to the residences of Uniloc Luxembourg S.A.'s CEO and Uniloc USA, Inc.'s president. (Dkt. No. 44 at 1–2.)

On July 21, 2017, this Court granted Apple's Motion to Propound, allowing for limited discovery in the form of a four-hour deposition and responses to pre-approved interrogatories. (*Id.*) The Court also granted Apple and Uniloc leave to file supplemental briefs related to venue, after such discovery was completed. (*Id.* at 4.) The Court held a hearing on the instant Motion on October 27, 2017. (Dkt. No. 88.)

### C. Uniloc's Representations and Contradictions

#### 1. Uniloc's Representations

Uniloc made the following representations in its § 1404(a) briefing prior to venue discovery:

Uniloc represented that its principal place of business is in Plano, Texas. (Dkt. No. 30 at 2; Dkt. No. 30-7, Burdick Decl. ¶ 7.) According to Uniloc's Response, Mr. Craig Etchegoyen, the CEO of Uniloc Luxembourg S.A., and Mr. Sean Burdick, Uniloc USA, Inc.'s president and general counsel, have resided in Kona, Hawaii and Plano, Texas, respectively, "since well before [the date of the Complaint]." (Dkt. No. 30 at 2.) Mr. Etchegoyen specifically represented in his declaration in this case that as of April 3, 2017, he has not resided or maintained a residence in the State of California. (Dkt. No. 36 at 1.) Similarly, according to Uniloc, Mr. Burdick does not live or work in California. (Dkt. No. 43 at 2 n.3 ("Oddly, Apple also repeats its erroneous assertion that Uniloc's

IP counsel lives and works in California. As stated in the Declaration of Uniloc's IP counsel, Sean Burdick, he resides and works in Plano, Texas.") (citations omitted).) Uniloc also represented that in April 2017, it had "only one" full-time employee, Tanya Kiatkulpiboone, working out of its Irvine, California office. (Dkt. No. 30-7, Burdick Decl. ¶ 10.)

In addition to Mr. Burdick, Uniloc identified two potential witnesses who work at its Plano office: Sharon Seltzer and Kristina Pangan. (Dkt. No. 30 at 8; Dkt. No. 30-7, Burdick Decl. ¶ 12.) Uniloc made similar representations in its response to a § 1404(a) motion in another case before this Court, *Uniloc v. Apple*, Case No. 2:16-cv-638 ("*Apple 1*"). Response to Motion to Change Venue, *Uniloc v. Apple*, Case No. 2:16-cv-638, Dkt. No. 21, at 8 (E.D. Tex. Nov. 29, 2016) ("Uniloc's declarant identifies three potential party witnesses who work at its Plano office (its President Mr. Burdick, Sharon Seltzer and Kristina Pangan)."). In its Reply (Dkt. No. 40), Apple argued that Uniloc's identification of Sharon Seltzer and Christina Pangan as party witnesses carried no weight because in *Apple 1*, after this Court denied Apple's motion to transfer under § 1404(a), Uniloc later represented to Apple that Ms. Seltzer and Ms. Pangan had "relatively little information to provide." (Dkt. No. 40-2, Ex. 33 at 29 ("Kris Pangan and Sharon Setzler [sic] each have relatively little information to provide. As such, Uniloc recommends that you withdraw their notices.").) However, in its Sur-Reply (Dkt. No. 43) to the instant Motion, Uniloc insisted that Ms. Seltzer and Ms. Pangan "have some relevant knowledge" in this case. (Dkt. No. 43 at 5 ("As Uniloc only has four full-time employees, three of which are based in Plano, it should not be surprising that Ms. Seltzer and Ms. Pangan have some relevant knowledge of Uniloc's business.") (citations omitted).)

In addition to witnesses, Uniloc represented it has "physical documents relating to the patents asserted in this case" at its Plano office. (Dkt. No. 30-7, Burdick Decl. ¶ 11.) In its Response

(Dkt. No. 3) and Sur-Reply (Dkt. No. 43), Uniloc did not explain what types of documents were stored in its Plano office. (*Id.*) Uniloc has made these same representations with respect to Uniloc's witnesses and relevant documents before the Court in multiple cases. *See, e.g.*, Response to Motion to Change Venue, *Uniloc v. Apple*, Case No. 2:16-cv-638, Dkt. No. 21 (E.D. Tex. Nov. 29, 2016); Declaration of Sean Burdick in Support of Plaintiff's Opposition to Defendant VoxerNet LLC's Motion to Transfer Venue, *Uniloc USA, Inc., et. al v. Voxernet LLC*, Case No. 2:16-cv-644, Dkt. No. 21-1, ¶ 11 (E.D. Tex. Oct. 10, 2016); Declaration of Sean Burdick in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue to the Northern District of California, *Uniloc USA, Inc., et. al v. Huawei Enterprise Inc.*, 6:16-cv-99, Dkt. No. 28-1, ¶ 12 (E.D. Tex. July 22, 2016).

### 2. Facts Revealed After Venue Discovery

After the Court ordered venue discovery, responses to Apple's interrogatories and Sean Burdick's 30(b)(6) deposition revealed the following facts about Uniloc's witnesses, places of business, and relevant documents:

Uniloc has three offices: a Plano, Texas office, a Tyler, Texas office, and a Newport Beach, California office (relocated from its prior Irvine, California office). (Dkt. No. 60-1, Ex. A at 47:14–20, 57:4–10, 94:1–10.) Although Uniloc asserted on multiple occasions that Mr. Etchegoyen and Mr. Burdick have not resided or maintained a residence in the State of California as of April 3, 2017, and filed signed declarations affirming such representations in this case, Mr. Burdick testified in its 30(b)(6) deposition that Mr. Etchegoyen currently maintains a residence in Newport Beach. (Dkt. No. 60-1, Ex. A at 160:3–16.) Mr. Etchegoyen uses the single-family residence in Newport Beach "when he is doing business in Orange County." (*Id.* at 160:15–16.) He has owned this property "at least since 2010." (*Id.* at 160:3–7.) Since 2017, Mr. Etchegoyen has spent about twenty percent of his time in either Newport Beach or Irvine, California. (Dkt. No. 60-2, Ex. B at

2.) Similarly, since 2015, Mr. Burdick has spent only "about 1/3 of his time in Plano, Texas." (*Id.*) The remainder of his time is spent in Boise, Idaho, Newport Beach, California, and Irvine, California. (*Id.*) Although Uniloc originally stated that it had "only one" full-time employee, Tanya Kiatkulpiboone, in Irvine, California,[1] (Dkt. No. 30 at 2), discovery has revealed that Mr. Drake Turner, Uniloc Luxembourg's chief financial officer, resides and works in southern California, albeit from home rather than Uniloc's Irvine and Newport Beach offices. (Dkt. No. 60-1, Ex. A at 153:2–154:11.) Mr. Turner, who prepares Uniloc's financial documents and negotiates terms with lending companies that have security interests in Uniloc's patents, is in a position to have relevant and material information in this case. (Dkt. No. 60-1, Ex. A at 153:2–25 ("He negotiates terms with companies like Fortress that lend money."); Order Denying Motion to Change Venue, *Uniloc v. Google*, Case No. 2:16-cv-566, Dkt. No. 75, at 7 (E.D. Tex. May 15, 2017) ("Fortress, located in the Northern District of California, has a security interest in all three [of Uniloc's] asserted patents.").)[2]

In 2016, Uniloc's CEO represented to Chief Judge Clark that "Uniloc USA has two headquarters," the office in Plano and the office presently located in Newport Beach (that was relocated from Irvine). (Dkt. No. 25, Ex. 5 ¶ 2.) In its Response (Dkt. No. 30), Uniloc vehemently insisted that Uniloc's principal place of business is only in Plano, Texas. (Dkt. No. 30 at 1–2 ("Although Uniloc has been based in Plano for years, Apple attempts to exaggerate Uniloc's ties to California.").)[3] However, discovery has expanded the Court's understanding of the use and implementation of Uniloc's Newport Beach office. According to Mr. Burdick:

---

[1] Ms. Kiatkulpiboone, one of the prosecuting attorneys of the patents-in-suit, currently resides in Napa, California, which is in the Northern District of California. (Dkt. No. 60-1, Ex. A at 50:10–19.)

[2] In addition to Mr. Turner, an additional Uniloc Luxembourg board member, Mr. Chad Meisinger, resides in southern California. (Dkt. No. 60-1, Ex. A at 59:6–17.)

[3] When asked why Mr. Etchegoyen represented that Uniloc had a headquarters in California in a signed declaration in 2016, Mr. Burdick testified that Mr. Etchegoyen "has dozens of documents to sign every day, and my belief is and my testimony today is that he just simply didn't scrutinize [the declaration] as closely as he should have before authorizing

A. The Newport Beach office is primarily an executive office for meetings, in-person meetings, [and] phone conferences. We discuss at the executive levels the business of the company, both Uniloc USA business and Uniloc Luxembourg business.

(Dkt. No. 60-1, Ex. A at 47:14–25.) Despite Mr. Burdick's assertion that Uniloc does not have a principal place of business in southern California, he admitted that Uniloc has held around 100 "top-level strategy meetings" in southern California in the last three years alone. (*Id.* at 54:8–55:11.) During these meetings, Uniloc strategizes both "for whom [Uniloc] acquires patents," and how to "negotiate and prepare for negotiations with outside counsel with other factions that do due diligence for us." (*Id.* at 54:20–55:10.) In *addition* to these management meetings, Uniloc Luxembourg's CEO holds monthly meetings in southern California with its CFO. (*Id.* at 175:4–13.) Uniloc's Newport Beach office "is primarily an executive office," used for meetings to discuss "at the executive levels the business of the company, both Uniloc USA business and Uniloc Luxembourg business." (*Id.* at 47:18–25.)

Discovery has revealed that there are no full-time employees working out of Uniloc's Plano office with knowledge of information relevant to case. Mr. Burdick, who spends approximately one-third of his time in Plano, does not work full-time out of Uniloc's Plano office. (Motion Hearing, October 27, 2017, Dkt. No. 98 ("Hearing Tr.") at 27:9–14 ("[Mr. Burdick] indicated he spends as much of his time in California, roughly, as he does [in the Eastern District of Texas]. Second reason he's not a full-time Uniloc employee is that he doesn't actually spend all his working time at Uniloc. Mr. Burdick . . . runs a private law practice up in Boise, Idaho, and devotes about as much of his time to that as he spends [] in this district.").) In addition, Ms. Pangan and Ms. Seltzer do not have information relevant to this case. Despite Uniloc's earlier representation

outside counsel to attach his signature to it." (Dkt. No. 60-1, Ex. A at 71:1–25 ("[T]his statement about two headquarters, which is nonsense, is now rearing its ugly head again. And, you know, all I can testify to is that it's an error.").)

in its Sur-Reply that Ms. Seltzer and Ms. Pangan "have some relevant knowledge of Uniloc's business," (Dkt. No. 43 at 5), Uniloc failed to identify either employee as a Uniloc employee "whom Uniloc contends has information relevant to the Patents-in-Suit or to Uniloc's claims in this case" in its Responses to Apple's Interrogatories (Dkt. No. 60-2, Ex. B at 1–2). When questioned on Ms. Pangan's work, Mr. Burdick admitted that Ms. Pangan's role as a patent paralegal for Uniloc is limited to tasks such as "filing documents" and preparing "shell responses." (Dkt. No. 60-1, Ex. A at 45:5–21.) Ms. Pangan is not involved in analyzing "the substance of responses to office actions," analyzing the "substance of claim amendments," or the "drafting of claims." (*Id.* at 45:17–21.)

Finally, the documents that Uniloc has continuously represented are "relevant, physical documents" are not solely available from its Plano office. (Dkt. No. 30 at 7.) Uniloc has three categories of documents related to the patents-in-suit or to this case: (1) patent prosecution history files; (2) prior art files in the same general technology fields as the patents-in-suit; and (3) Uniloc's settlement agreements in prior cases with similar patented technologies. (Dkt. No. 60-1, Ex. A at 93:5–94:10.) During Uniloc's 30(b)(6) deposition, Mr. Burdick admitted that Uniloc's patent prosecution history files and prior art files in this case do not contain "anything substantive beyond what's contained in [Public] Pair," the Patent and Trademark Office's website that "allows the general public to access and download copies of the prosecution histories for patents." (*Id.* at 95:1–23, 107:12–22.) Ultimately, Uniloc's patent prosecution and prior art files are hard copy files, maintained in Plano, that "more or less mirror" the files readily available on Public PAIR. (*Id.* at 94:3–24.) Approximately ninety-five percent of the prior art that Uniloc stores in its "prior art library" was originally acquired in electronic form. (*Id.* at 119:11–15.)

In addition, the electronic versions of the prosecution histories for Uniloc's patents-in-suit are kept on a file server located in Irvine, California. (*Id.* at 103:8–104:6.) The electronic version of Uniloc's library of settlement agreements are similarly located on the file server in Irvine. (*Id.* at 128:5–13.) The Irvine file server contains certain directories or areas that are accessible only to Uniloc Luxembourg employees, as well as areas that are only accessible to Uniloc USA employees. (*Id.* at 145:10–19.)

## II.    LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009).

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d at 1198. The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized

interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203. These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

In the Fifth Circuit, the plaintiff's choice of venue has not been considered a separate factor in this analysis. *Volkswagen II*, 545 F.3d at 314–15. However, "[t]he Court must also give some weight to the plaintiffs' choice of forum." *Atl Marine Const. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 134 S. Ct. 568, 581 n.6 (2013) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). "Plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), [and the Supreme Court has] termed their selection 'the plaintiff's venue privilege.'" *Id.* at 581 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964)). In the Fifth Circuit, the "venue privilege" contributes to the defendant's elevated burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

## III. ANALYSIS

The Court will examine each of the applicable private and public factors listed above, addressing the Parties' specific arguments where applicable.

## A. The Suit Could Have Been Brought in the Northern District of California

The parties do not dispute that this action could have been brought in the Northern District of California. Thus, the threshold requirement for a § 1404(a) transfer has been satisfied.

## B. Private Interest Factors

### *1. Relative Ease of Access to Sources of Proof*

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. Relevant evidence in patent cases often comes from the accused infringer and may weigh in favor of transfer to that location. *Genentech*, 566 at 1345.

Uniloc asserts that it has physical documents relating to the patents-at-issue in its Plano office. (Dkt. No. 30-7, Burdick Decl. ¶ 11.) However, the vast majority of Uniloc's documents are publicly available on the PTO's Public PAIR website. (Dkt. No. 60-1, Ex. A at 107:7–22, 118:2–24.) Uniloc's physical documents in Plano consist of prosecution history, prior art, and settlement documents. (*Id.* at 93:5–94:10.) Uniloc's prosecution history records for the provisional patent applications in this case do not contain "anything substantive[]" beyond what is reflected in the publicly available versions of those file histories on PAIR. (*Id.* at 95:4–23, 107:17–22.) In addition, approximately ninety-five percent of the Uniloc's prior art documents are cited in some form of patent office prosecution, downloaded from PAIR. (*Id.* at 107:7–16, 118:13–24, 119:11–22 ("Q. Can you ballpark for me the proportion of the prior art in Uniloc's prior art library that it originally acquired in electronic form? A. It's probably that same 95 percent approximation.").) The remaining documents, Uniloc's settlement documents, are not publicly available. However, all of Uniloc's physical documents in Plano are also electronically stored in Uniloc's file server, located in Irvine, California. (*Id.* at 103:8–104:6.)

Although the Internet and the availability of online storage have significantly lightened the relative inconvenience of transporting large amounts of documents across the country, the physical accessibility to sources of proof remains a private interest factor to be considered. Until the appellate courts address this reality, trial courts must continue to apply this factor consistent with current precedent. *See Volkswagen II*, 545 F.3d at 316; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320–21 (Fed. Cir. 2008); *Genentech*, 566 F.3d at 1345–46. Accordingly, this Court must give Uniloc's Plano documents some weight, regardless of their availability online and through their servers. However, Uniloc's Plano documents are not the only physical documents relevant to this inquiry.

Uniloc's infringement case relates to Apple's Maps destination-prediction functionality, Apple's iOS software update process, and Apple's use of Unique Device Identifiers ("UDIDs"). (Dkt. No. 1 at 2–13; Dkt. No. 25-1, Michael Jaynes Decl. ¶ 6.) The electronic and paper records of these technologies are located in or near Cupertino, California, within the Northern District of California. (Dkt. No. 25-1, Michael Jaynes Decl. ¶ 7.) Documents concerning the marketing of the accused technologies in the United States all reside in or near Cupertino. (*Id.* ¶ 14.) In addition, physical alleged prior art, such as Google's Google Now technology and its corresponding products, are likely in the Northern District of California. (Dkt. No. 25 at 7 ("[T]he relevant Google Now source code and design documents, and sample products running Google Now (such as the Nexus 4 phone and Nexus 10 tablet) are likely located there."); Dkt. No. 25-21, Ex. 19, D. Hoffman Decl. ISO Google's Mtn. to Transfer ¶¶ 6, 12.) Uniloc argues that Apple maintains "an admittedly 'massive' 1.1 million square feet facility in Austin, Texas at which it could also download documents from its California headquarters." (Dkt. No. 64 at 1.) For the same reasons that this Court must give Uniloc's physical documents in Plano some weight, regardless of the relative

inconvenience of downloading electronic copies from a website or Uniloc's servers, this Court must give weight to Apple's physical documents and relevant physical prior art technologies situated in the Northern District of California. *See Genentech*, 566 F.3d at 1345–46 (rejecting the district court's argument that the physical location of relevant documents is somewhat antiquated in the era of electronic storage and transmission "because it would render this factor superfluous").

Although Apple argues that it "identified a much greater volume of documents in the Northern District than Uniloc did here," this evidence does not support a finding that this factor favors transfer. (Dkt. No. 40 at 3.) The Federal Circuit has stated that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345 (quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). However, as other courts have noted, a rigid application of this isolated statement from *Genentech* "would seem to require the transfer of every patent infringement action from the district of the victim to the district where the defendant is located, a patently absurd result." *Choon's Design, LLC v. Larose Indus., LLC*, No. 13-13569, 2013 WL 5913691, at *3 (E.D. Mich. Nov. 1, 2013). Taking the Federal Circuit's statement in *Genentech* to its extreme would result in a transfer analysis where, in almost every patent case, an accused infringer would have a built-in factor weighing in its favor. This should not be the proper result. Rather, when considered in its proper context, the statement simply provides another piece of helpful guidance to consider when evaluating this factor in the ordinary transfer analysis. In *Genentech*, the Federal Circuit explained that all of the defendant's documents were housed in the transferee venue, while no evidence whatsoever was housed in the transferor venue. *Genentech*, 566 F.3d at 1345. When considered in light of the other transfer factors, the circuit court concluded that the plaintiff's

chosen venue had "no connection to any of the witnesses or evidence relevant to the cause of action." *Id.* at 1340–41. The same kind of a tenuous connection with the transferor venue does not exist in this case.

Applying the law to the facts of this case, the Court finds that this factor is neutral. Uniloc has documents housed in this District, and Apple has documents in California. Uniloc's physical documents relating to prior art and settlement are likely relevant to the Parties' invalidity and damages positions in this case, and Apple's prior art and marketing physical documents are likely relevant to the Parties' infringement and invalidity positions. Although the relative volume of documents may tilt in favor of defendants in some cases, such as *Genentech*, it does not do so here, where the transferor District contains a substantial number of physical sources of proof.

### 2. Availability of Compulsory Process

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and nonparty residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a nonparty witness's attendance

at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

Apple has named multiple third-party witnesses residing within the Northern District of California who are said to have worked on asserted prior art. (Dkt. No. 25 at 8; Dkt. No. 25-27, Ex. 25.) Apple argues that these witnesses all worked on technology related to the functionalities asserted in Uniloc's patents-at-issue, and that all of these witnesses are subject to either the absolute or trial subpoena power of the Northern District of California. (Dkt. No. 25 at 8–10.) Apple has specifically identified each non-party witness it plans to call to trial, explained why that witness's testimony would be material and relevant to the case, and has submitted evidence before this Court as to the current locations of such witnesses. (*Id.*; Dkt. No. 25-27, Ex. 25.) Further, Apple identified Ms. Kiatkulpiboone, a prior Uniloc employee currently residing in the Northern District of California, as one of the prosecuting attorneys on the patents-in-suit. (Dkt. No. 60 at 4; Dkt. No. 25-13, Ex. 11 at 2.) Ms. Kiatkulpiboone is subject to the absolute subpoena power of the Northern District. Although Uniloc argues that "all substantive papers" for the patents-in-suit were signed by Mr. Burdick, Ms. Kiatkulpiboone, as the prosecuting attorney, likely has information relevant to the issue of infringement or invalidity. *Genentech*, 566 F.3d at 1344 ("The petitioners have identified witnesses relevant to those issues of [inequitable conduct, infringement, and invalidity,] and the identification of those witnesses weighs in favor of transfer.").

In contrast, Uniloc has not named any third-party witnesses residing within the Eastern District of Texas with information "material or relevant" to the case. (Dkt. No. 30 at 9–11; Dkt. No. 43 at 2–3; Dkt. No. 64 at 3–4.) Uniloc's only reference to any potential third-party witnesses are those "several former employees" referenced in Mr. Burdick's declaration. (Dkt. No. 30-7, Burdick Decl. ¶ 14.) However, Uniloc does not even identify what relevant information such

witnesses would have. (*Id.*); *Genentech*, 566 F.3d at 1343 ("A district court should assess the relevance and materiality of the information the witness may provide."). Rather, Uniloc generally asserts that these witnesses have "historical knowledge regarding Uniloc's business." (*Id.*) In fact, Uniloc has not disputed Apple's assertion that Uniloc failed to present evidence of any third-party witness within this District with "relevant and material information" to this litigation. (Dkt. No. 25 at 10; Dkt. No. 30 at 9–11; Dkt. No. 43 at 2–3; Dkt. No. 64 at 3–4.)

Based on such evidence, the Court finds that this factor weighs in favor of transfer.

### 3. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech*, 566 F.3d at 1342. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317).

Uniloc has only one party witness who resides within the Eastern District of Texas: Mr. Sean Burdick. Although Uniloc has represented, both in this case and in prior cases, that it has three potential witnesses working from its Plano office, discovery has revealed that Uniloc does not consider two of the three witnesses to have relevant information. (Dkt. No. 60-2, Ex. B at 1–2.) Indeed, the record reflects that Uniloc has been aware of the actual number of relevant witnesses residing in the Eastern District of Texas for some time, despite contradictory representations. *Compare* (Dkt. No. 40-2, Ex. 33 at 29 ("Kris Pangan and Sharon Setzler [sic] each have relatively little information to provide. As such, Uniloc recommends that you withdraw their notices.")), *with* (Dkt. No. 30 at 8 ("In any event, Uniloc's declarant identifies three potential party witnesses who work at its Plano office (its President Mr. Burdick, Sharon Seltzer and Kristina Pangan).")), *and* (Dkt. No. 30-7, Burdick Decl. ¶ 12 ("In addition to myself[, Sean Burdick,] there are two other

employees, Sharon Seltzer and Kristina Pangan, who work full-time at Uniloc's Plano, Texas office who have knowledge regarding Uniloc's day-to-day businesses.")), *and* Declaration of Sean Burdick in Support of Plaintiff's Opposition to Defendant VoxerNet LLC's Motion to Transfer Venue, *Uniloc USA, Inc., et. al v. VoxerNet LLC*, Case No. 2:16-cv-644, Dkt. No. 21-1, ¶ 11 (E.D. Tex. Oct. 10, 2016) ("[T]here are two other employees, Sharon Seltzer and Kristina Pangan, who work full-time at Uniloc's Plano, Texas office who have knowledge regarding Uniloc's business and royalties received by Uniloc from licensing its patents."), *and* Declaration of Sean Burdick in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue to the Northern District of California, *Uniloc USA, Inc., et. al v. Huawei Enterprise Inc.*, 6:16-cv-99, Dkt. No. 28-1, ¶ 12 (E.D. Tex. July 22, 2016) ("[T]here are two other employees, Sharon Seltzer and Kristina Pangan, who work full-time at Uniloc's Plano, Texas office who have knowledge regarding royalties received by Uniloc from its licensing activities."), *and* Declaration of Sean Burdick in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue to the Northern District of California, *Uniloc USA, Inc., et. al v. Tangome, Inc.*, 6:16-cv-380, Dkt. No. 19-1, ¶ 12 (E.D. Tex. July 22, 2016) ("[T]here are two other employees, Sharon Seltzer and Kristina Pangan, who work full-time at Uniloc's Plano, Texas office who have knowledge regarding royalties received by Uniloc from its licensing activities.").

The Court finds such contradictory representations troubling, particularly because they are not isolated exceptions. Mr. Burdick, Uniloc's only party witness residing within the Eastern District of Texas, does not spend the majority of his time in the Plano office. (Dkt. No. 60-2, Ex. B at 2.) Mr. Burdick spends equally as much time in Plano, as he does in Boise, Idaho and in southern California. (*Id.*) In addition, Mr. Etchegoyen spends about twenty percent of his time in either Newport Beach or Irvine, California and owns a residence in Newport Beach, which he uses

16

when he "is doing business in Orange County." (*Id.*; Dkt. No. 60-1, Ex. A at 160:15–16.) Both Mr. Burdick and Mr. Etchegoyen have held around one hundred "top-level strategy meetings" in southern California, for Uniloc business purposes. (Dkt. No. 60-1, Ex. A at 54:2–55:11.) Mr. Etchegoyen separately travels to southern California every month to meet with Mr. Turner, Uniloc Luxembourg S.A.'s CFO. (Dkt. No. 60-1, Ex. A at 47:18–25.) All of these facts fly in the face of Uniloc's prior representations: that Uniloc had only one full-time employee, Tanya Kiatkulpiboone, working at its office in Irvine, California as of April 2017 (Dkt. No. 30-7, Burdick Decl. ¶ 10);[4] that Mr. Etchegoyen has lived in Hawaii since well before the filing date of the Complaint and does not maintain a residence in California (Dkt. No. 30 at 12);[5] and that Mr. Burdick does not work in California (Dkt. No. 43 at 2 n.3 "Apple also repeats its erroneous assertion that Uniloc's IP counsel lives and works in California.");[6] and that Apple "attempts to exaggerate Uniloc's ties to California" (Dkt. No. 30 at 1–2).[7] The Court finds that these Uniloc witnesses, witnesses that likely have information relevant to the case, would incur at least the same amount of inconvenience traveling to the Eastern District of Texas as they would to the Northern

---

[4] Mr. Turner, Uniloc Luxembourg S.A.'s CFO, and Mr. Meisinger, another Uniloc board member, both reside and work in southern California. (Dkt. No. 60-1, Ex. A at 59:6–11, 153:2–154:11.) Uniloc's failure to note that it has multiple employees residing and working in southern California, albeit from home and not from Uniloc's Irvine office, is misleading, given that travel within California is more convenient than travel from southern California to the Eastern District of Texas.

[5] Mr. Etchegoyen owns a single-family residence in Newport Beach which he uses "when he is doing business in Orange County," and spends about twenty percent of his time in either Newport Beach or Irvine, California. (Dkt. No. 60-1, Ex. A at 160:3–16.)

[6] Mr. Burdick testified in his deposition that he spends approximately one-third of his time in Newport Beach or Irvine, California, and has participated in approximately one-hundred executive meetings in southern California. (Dkt. No. 60-2, Ex. B at 2; Dkt. No. 60-1, Ex. A at 54:8–15.)

[7] Mr. Burdick testifying that at Uniloc USA's southern California meetings:

> [W]e acquire patents. We do due diligence on these acquisitions. We strategize in preparation for our negotiations with parties, both, you know, for whom we acquire patents and we negotiate and prepare for negotiations with outside counsel with other factions that do due diligence for us. They're top-level strategy meetings."

(Dkt. No. 60-1, Ex. A at 54:20–55:11.)

District of California. Furthermore, Ms. Kiatkulpiboone, a prosecuting attorney of the patent-in-suit, would incur substantially more inconvenience traveling to the Eastern District of Texas as she now resides in the Northern District of California. (Dkt. No. 60-1, Ex. A at 50:10–19.)

On the other hand, Apple has identified nine party witnesses that have relevant knowledge with respect to the accused products, six of whom are engineers. (Dkt. No. 25 at 11–12.) Uniloc argues that it would be unnecessary for all six of the engineer witnesses to testify at trial, and that "in reality, "Apple needs one or, at most two, engineers at trial." (Dkt. No. 30 at 12.) However, Apple explains that all of its witnesses are necessary to this case because "Uniloc's complaint asserts three unrelated patents against at least five separate pieces of Apple software (Maps, iTunes, iCloud, the App Store, and iOS software updates)." (Dkt. No. 40 at 4.) Each party witness has a different position, each related to one of the multiple accused functionalities. (Dkt. No. 25 at 11–12 (describing each party witness's position at Apple, ranging from an "Apple Software Engineering Manager for the Maps Predictions and Extensions team" to the "Engineering Manager on Apple's iOS Restore Team" to "an Apple Senior Software Engineer who is knowledgeable about Apple's UDID and how it is generated").) Apple's counsel "personally interviewed" the engineers who work on the accused functionalities, and represented that the identified party witnesses are the witnesses who can offer testimony in support of Apple's non-infringement case. (Hearing Tr. at 8:5–23.) Uniloc responds that it is willing to take the videotape deposition of Apple's party witnesses for use at trial in this Court. (Dkt. No. 43 at 3.) However, it is improper to discount a party's stated desire to present live witness testimony even when deposition testimony is available. *See, e.g.*, *McDowell v. Blankenship*, 759 F.3d 847, 852 (8th Cir. 2014) ("While live witness testimony is axiomatically preferred to depositions, particularly where credibility is a central issue, Rule 32(a)(4) balances that preference against the practical need for some testimony

in situations where live testimony is impracticable." (citations omitted)). Apple has represented that it is Apple's intention to bring these witnesses in-person to testify to the jury. (Hearing Tr. at 9:18–25 ("It's not our intention to present them via videotape, and it's not our intention to—to make representations to you and then not provide these witnesses.").) In addition, even if the Court entertained Uniloc's assertion that "[*a*]*t most*, three engineers would be required at trial in this case," Apple's three engineer witnesses and three additional party witnesses are more than Uniloc's one party witness, who only resides part-time in the Eastern District of Texas.

Uniloc separately argues that Apple's Austin campus likely includes "numerous witnesses having knowledge relevant to this case," and that could "conveniently attend trial in this Court." (Dkt. No. 30 at 8.) However, Apple has provided unrebutted evidence that none of the engineers or teams working on the accused functionalities work out of Apple's Austin campus. (Dkt. No. 25-1, Michael Jaynes Decl. ¶¶ 7–13 ("As described below, no Apple employees who work on the functionalities described above are located in Texas.").) Indeed, Uniloc's own initial disclosures do not list any Apple Austin employees as potentially having relevant information. (Hearing Tr. at 33:3–25 ("And nowhere on Uniloc's initial disclosures is there anyone listed as potentially having relevant information who's located in Texas . . . every single person that they put on here has got California after their [] location.").)

Apple has named multiple party and non-party witnesses residing within the Northern District of California, while Uniloc has named only one employee who resides part-time in the Eastern District of Texas. Having considered the weight of the evidence, discussed herein, the Court finds that this factor weighs in favor of transfer.

### 4. All Other Practical Problems

"Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create

practical difficulties that will weigh heavily in favor or against transfer." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 6:09-cv-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011). The Court agrees with the Parties that this factor is neutral. (Dkt. No. 25 at 13–14; Dkt. No. 30 at 13.)

### C. Public Interest Factors

#### 1. The Administrative Difficulties Flowing From Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. Though the statistics vary slightly by source, this Court has consistently found that median time to trial in this District is several months faster than the Northern District of California. *See, e.g., ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2:13-cv-1112, 2015 WL 1885256, at *10 (E.D. Tex. Apr. 24, 2015); *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-61 (Dkt. No. 38) (E.D. Tex. Apr. 16, 2014) ("The six-month difference in median time, though not substantial, is not negligible."). Accordingly, the Court finds that this factor weighs slightly against transfer.

#### 2. Local Interest in Having Localized Interests Decided at Home

Apple argues that the Northern District of California has a greater local interest in this dispute than the Eastern District of Texas. Apple contends that the Northern District has a "strong local interest" in this case because the cause of action calls into question "the work and reputation of several individuals residing in or near that district." (Dkt. No. 25 at 14 (quoting *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2008).) However, this District similarly has an interest in protecting the intellectual property rights of its residents. *See ThinkTank One Research, LLC v. Energizer Holdings, Inc.*, No. CV M-15-0389, 2015 WL 4116888, at *3 (E.D. Tex. July 7, 2015). Regardless of the number of Uniloc's employees in comparison to Apple's employees, Uniloc has maintained offices in this District since 2007 and has had its principal place of business

in this District since April 2012. (Dkt. No. 30-7, Burdick Decl. ¶ 7.) As a Texas corporation with multiple office locations within the Eastern District of Texas, Uniloc has an equally proportional connection to this District. Such connection should not be disoriented by focusing on the disparity in size of these different corporations.

Thus, given that both this District and the Northern District of California have localized interests in these cases, the Court finds that this factor is neutral.

### 3. Avoidance of Unnecessary Conflicts of Law

The Court agrees with the parties that there are no conflict-of-law issues apparent in this case. This factor is also neutral.

### 4. The Familiarity of the Forum with the Governing Law

The Court agrees with the parties that both courts are equally familiar with patent law. The final public factor is neutral.

### IV. CONCLUSION

While five of these factors are neutral, two favor transfer, and one disfavors transfer, the Court finds that the significant number of both party and non-party witnesses in California have shown that the convenience of the witnesses weighs strongly in favor of transfer. This is especially true where Uniloc has no such witnesses in the Eastern District of Texas. In fact, the majority of Uniloc's relevant party witnesses reside at least part-time within the State of California, within the Northern District of California's subpoena power. Ultimately, this tips the scales in this particular case towards transfer.[8]

For the reasons stated above, Apple's Motion to Transfer Venue (Dkt. No. 25) is **GRANTED**.

---

[8] Having considered the relevant factors, the Court is of the opinion that Apple has satisfied its "significant burden" to show good cause as to why this case should be transferred. *Volkswagen II*, 545 F.3d at 315 n.10.

**So ORDERED and SIGNED this 22nd day of December, 2017.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE